Elisabeth E. Martini (SBN 301701)
Email: emartini@rlattorneys.com
Zachary L. Hamilton (SBN 304785)
Email: zhamilton@rlattorneys.com
**RESNICK & LOUIS P.C.**
9891 Irvine Center Drive, Suite 200
Irvine, CA 92618
Phone Number: (602) 456-6776
Fax: (602) 456-6776

*Attorneys for Plaintiff Great West Casualty Company*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT WEST CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TRANS XPRESS LINE INC.,<br><br>Defendant. | Case No.:<br><br>COMPLAINT FOR DECLARATORY RELIEF/JUDGEMENT |

Plaintiff GREAT WEST CASUALTY COMPANY ("Great West") by and through its attorneys, hereby alleges as follows against Defendant TRANS XPRESS LINE INC. ("Trans Xpress")

### **INTRODUCTION**

1. Pursuant to 28 U.S.C. §2201, Great West brings this action for Declaratory Relief/Judgment requesting a judgment declaring the respective rights

and obligations of the parties in connection with an actual controversy arising under a Commercial Auto policy issued by Great West to Defendant Trans Xpress Line Inc.

2. This matter arises out of an alleged breach of contract between Penske Truck Leasing Co. ("Penske") and Trans Xpress Line Inc. ("Trans Xpress") relating to the lease of certain equipment by Trans Xpress from Penske. (the "Underlying Claim").

3. A lawsuit was commenced by Penske against Trans Xpress, case number BCV-20-102861, in Kern County Superior Court (the "Penske Lawsuit") asserting causes of action for breach of written vehicle lease service agreement, account stated, and open book account. A copy of the Penske Lawsuit is attached and incorporated herein as **Exhibit 1.**

4. At the time of the Underlying Claim, Trans Xpress had a commercial auto liability insurance policy through Great West.

5. Trans Xpress tendered the defense of the Penske Lawsuit to Great West.

## PARTIES, JURISDICTION AND VENUE

6. Great West is a corporation organized and existing under the laws of the State of Nebraska and has its principal place of business located at 1100 West 29th Street, South Sioux City, Nebraska, 68776. Great West is in the business of providing and underwriting insurance.

7. TRANS XPRESS LINE INC. is a corporation organized and existing under the laws of the State of California and has its principal place of business located in California.

8. Great West seeks a declaration that it is not obligated to provide a defense to Trans Xpress, including defense costs for attorneys' fees, in connection with the Penske Lawsuit.

9. Great West also seeks a declaration that it does not owe a duty to indemnify Trans Xpress in connection with the Penske Lawsuit.

10. This is a civil action of which this Court has original jurisdiction under 28 U. S. C. § 1332 and 28 U.S.C. § 1441, subsection (b). Plaintiff is a resident of the State of Nebraska and Defendant is a corporation formed under the laws of the State of California with its principal place of business in California.

11. Pursuant to Federal Rule of Civil Procedure 57, provides that Great West may seek a declaration from this Court as to the rights and obligations among and between the parties in relation to the Great West-issued insurance policy at issue, including, but not limited to, whether Great West has an obligation to provide a defense and/or indemnity to Trans Xpress in connection with the Penske Lawsuit and the claims which are the subject of the Penske Lawsuit.

12. As detailed more thoroughly below, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs because Penske seeks approximately $110,858.22 relating to allegedly unpaid lease costs, and $1,273,903 relating to an election allegedly allowed pursuant to an agreement between Trans Xpress and Penske. The Great West Commercial Auto Policy has a limit of liability of $1,000,000.

13. The insurance contract between Great West and Trans Xpress that is the subject of this declaratory judgment action was issued to Trans Xpress in this district. Further, the alleged acts and omissions on the part of Trans Xpress that precipitated the claims for which coverage is sought took place in this district.

Pursuant to 28 U.S.C. §1391, venue is proper in this Court as a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## FACTUAL BACKGROUND

**A.     The Penske Lawsuit**

14.    On or around April 27, 2017, Penske and Trans Xpress entered into a contract entitled "Vehicle Lease Service Agreement" (the "VLSA").

15.    Pursuant to the VSLA, Trans Xpress rented/leased twenty-one (21) commercial vehicles and three (3) commercial trailers for use by Trans Xpress in their trucking business.

16.    A schedule of the rented/leased vehicles and trailers was attached to the VSLA as "Schedule A."

17.    Schedule A included agreed upon values of vehicles, depreciation credits, fixed lease charges, mileage charges, and vehicle/equipment numbers.

18.    Penske alleges that it charged Trans Xpress in accordance with the terms of the VSLA, but that beginning in September 2019 Trans Xpress began defaulting on the payments due under the VSLA.

19.    Penske alleges that charges in the amount of $110,858.22 remain unpaid for the time period of September 27, 2019 through February 3, 2020.

20.    Trans Xpress allegedly caused damage to one of the trailers rented from Penske, in the amount of approximately $38,126, which was covered under the applicable insurance policy and paid by Great West.

21.    The Penske Lawsuit alleges that this trailer was simply not returned to Penske.

22.    Penske has dismissed the claims asserting entitlement to damages associated with the trailer.

23. The Penske Lawsuit also alleges that under paragraph 14 of the VSLA, Trans Xpress agreed that upon early termination of the VLSA that Penske was entitled to elect a remedy requiring Trans Xpress to pay Penske liquidated damages for each vehicle.

24. The Penske Lawsuit alleges that the "Alternate Payment" authorized by this provision of the VLSA requires payment by Trans Xpress in the amount of $1,273,903.

25. The Penske Lawsuit seeks recovery under the following causes of action: breach of written VSLA Agreement, Account Stated, Open Book Account.

**B.    The Great West Casualty Company Policy**

26. Great West issued Policy GWP92290H to Trans Xpress with effective dates of February 10, 2019 through February 10, 2020 (the "Policy.") **See Exhibit 2 – Insurance Policy**.

27. The policy contains a Commercial Auto Coverage – Motor Carrier coverage part with a liability limit of $1,000,000.

28. The Policy provided, in part, the following relevant language:

**SECTION II − COVERED AUTOS LIABILITY COVERAGE**

> **A. COVERAGE**
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> …

COMPLAINT FOR DECLARATORY RELIEF/JUDGEMENT

5

**1. WHO IS AN INSURED**

The following are "insureds":

**a.** You for any covered "auto".

…

**c**. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

**d**. The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

However, none of the following is an "insured":

**a.** Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":

    **(1)** If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

    **(2)** If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and

"employees" while the "autos" are
leased to that "motor carrier" and
used in his or her business.
However, Paragraph (a) above does not
apply if you have leased an "auto" to the
for hire "motor carrier" under a written
lease agreement in which you.

However, Paragraph (a) above does not apply if you have leased an "auto" to the for hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

**b**. Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" or a "covered pollution cost or expense" occurs while the "trailer" is detached from a covered "auto" you are using and:

**(1)** Is being transported by the carrier; or

**(2)** Is being loaded on or unloaded from any unit of transportation by the carrier.

**B. EXCLUSIONS**

**2. CONTRACTUAL**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in absence of the contract or agreement.

## 6. CARE, CUSTODY OR CONTROL

"Property damage" to or … involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability:

**a.** Assumed under a sidetrack agreement;

## SECTION V − MOTOR CARRIER CONDITIONS

**A.  LOSS CONDITIONS**

...

**2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names

and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us:

   **(a)** In the investigation or settlement of the claim; or

   **(b)** In the investigation of, settlement of or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

**SECTION VI –DEFINITIONS**
…
**C. "Auto"** means:
**1.** A land motor vehicle, "trailer" or semitrailer

COMPLAINT FOR DECLARATORY RELIEF/JUDGEMENT

9

designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. However, "auto" does not include "mobile equipment".

**D. "Bodily injury"** means "bodily injury", sickness or disease sustained by a person including death resulting from any of these

**K. "Insured"** means any person or organization qualifying as an "insured" in the Who is an Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each "insured" who is seeking coverage or against whom a claim or "suit" is brought.

**L. "Insured contract"** means:

    **1.** A lease of premises;

    **2.** A sidetrack agreement;

    **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **5.** That part of any other contract or agreement pertaining to your business

(including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

**6.** That part of any other contract or agreement entered into, as part of your business, pertaining to the loan, lease or rental, by you or any of your "employees", of any "auto".

However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" loaned, leased or rented by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned,

leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" unless the covered "auto" is used in your business as a "motor carrier" for hire as in Section II, Paragraph A.1.d. of the Who Is An Insured provision.

**P. "Motor Carrier"** means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise

### FIRST CAUSE OF ACTION
### (Declaratory Relief/Judgment)

29. Great West repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

30. An actual controversy has arisen and now exists between Great West and Trans Xpress concerning their respective rights and duties under the Policy.

31. Great West contends that there is no possibility of coverage available under the Policy, including no duty to defend and no duty to indemnify Trans Xpress from the allegations and damages in the Penske Lawsuit because in order for coverage to be available in the first instance, there must be either "bodily injury" or "property damage" caused by an "occurrence."

32. There are no allegations in the Penske Lawsuit of any "bodily injury."

33. There are similarly no allegations of "property damage" with respect to the damages sought by Penske.

34. Instead, the Penske Lawsuit alleges that Trans Xpress failed to pay invoices resulting in damages in the amount of at least $110,858.22 before interest or other recoverable costs, and that Trans Xpress owes Penske liquidated damages in the amount of $1,273,903.

35. Great West agreed to defend Trans Xpress in connection with the Penske Lawsuit subject to a full reservation of rights, including its right to seek a judicial determination of any obligations which Great West may have under the Policy.

36. Penske has sued Trans Xpress on entirely contract-based claims. None of the causes of action contain allegations of "bodily injury" or "property damage" caused by an "occurrence."

37. Policy defines an occurrence as an accident.

38. In the Penske Lawsuit the claims and allegations stem entirely from Trans Xpress's alleged intentional conduct regarding the failure to pay rental invoices and comply with the terms of the VSLA.

39. As such, there is also no "occurrence."

40. Because there is no "bodily injury" or "property damage" caused by an "occurrence" there is no coverage available under the Policy.

41. The Policy also contains an exclusion precluding coverage for liability arising from a contract or agreement, unless it is a "insured contract."

42. The VSLA does not qualify as an "insured contract" and therefore, the contractual liability exclusion also applies to preclude coverage for the claims asserted in the Penske Lawsuit.

43. The Penske Lawsuit does not qualify for coverage under the Policy.

44. Because there is no possibility of coverage in connection with the Penske Lawsuit Great West does not have a duty to defend Trans Xpress.

45. Similarly, Great West does not have a duty to indemnify Trans Xpress in connection with the claims asserted in the Penske Lawsuit.

46. Any delay in declaring and/or determining the parties' rights, duties, and obligations, will result in Great West expending unnecessary, and potentially unrecoverable, funds in defending Trans Xpress in the Penske Lawsuit.

**PRAYER**

WHEREFORE, Plaintiff Great West prays for relief as follows:

1. For a judgment declaring Great West's rights, duties, and/or obligations as to Trans Xpress in relation to the Penske Lawsuit and that there is no insurance coverage under the Policy in relation to the Penske Lawsuit;

2. For a judgment declaring that Great West does not owe a duty to defend because in order for coverage to be available in the first instance, the Policy requires either "bodily injury" or "property damage" caused by an "occurrence."

3. For a judgment declaring that Great West does not owe a duty to indemnify, or any other obligation to Trans Xpress in the Penske Lawsuit;

4. For costs of this suit, including attorneys' fees and costs as applicable;

5. For such other and further relief as the Court deems just and proper.

**DATED** this 17th day of November, 2023.

**RESNICK & LOUIS P.C.**

By:_____
Elisabeth E. Martini
Zachary L. Hamilton
*Attorneys for Plaintiff Great West Casualty Company*